UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| | ) | CHAPTER 7 |
| IN RE: | ) | |
| | ) | CASE NO. 20-67784-JWC |
| DARWIN G. FLORES, | ) | |
| | ) | |
| Debtors. | ) | |
| ------------------------------------- | )------------------------------------- | |
| | ) | |
| S. GREGORY HAYS, as Chapter 7 trustee, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| NEWREZ LLC d/b/a Shellpoint Mortgage | ) | |
| Servicing, GWINNETT COUNTY TAX | ) | |
| COMMISSIONER and DARWIN G. FLORES, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**TRUSTEE'S MOTION FOR AUTHORITY TO (A) SELL PROPERTY OF THE
BANKRUPTCY ESTATE FREE AND CLEAR OF ALL LIENS, INTERESTS, AND
ENCUMBRANCES AND (B) DISBURSE CERTAIN PROCEEDS AT CLOSING**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy

estate of Darwin G. Flores ("**Debtor**"), pursuant to 11 U.S.C. §§ 363(b), (f), and (m), and Fed. R.

Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, through undersigned counsel, and files

*Trustee's Motion for Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of*

*Liens, Interests, and Encumbrances and (B) Disburse Certain Proceeds at Closing* (the "**Sale**

**Motion**"), respectfully showing:

1

**Venue and Jurisdiction**

1.     This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

*a. General Background*

2.     Debtor initiated the underlying bankruptcy case (the "**Case**" or "**Bankruptcy Case**") by filing a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "**Bankruptcy Code**") on July 2, 2020 (the "**Petition Date**").

3.     Also on the Petition Date, Debtor filed under penalty of perjury his *Statement of Financial Affairs, Schedules "A"* through *"J",* and other bankruptcy documents. [Doc. No. 1].

4.     On February 10, 2022, the Court entered an order converting the Case to one under Chapter 7.  [Doc. No. 50].

5.     Trustee was thereafter appointed the duly acting Chapter 7 trustee in the Case under 11 U.S.C. § 701(a)(1), and he remains in this role.

6.     At the commencement of the Case, the Debtor's bankruptcy estate was created under 11 U.S.C. § 541(a) (the "**Bankruptcy Estate**"), and it includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Bankruptcy Estate acquires after commencement of the Case.  11 U.S.C. §§ 541(a)(1) and (7).

7.     Trustee is the sole representative of the Bankruptcy Estate.  11 U.S.C. § 323(a).

8.     The duties of Trustee include his obligation to "collect and reduce to money the property of the estate . . . ." 11 U.S.C. § 704.

9.      Debtor is now proceeding *pro se*.  [Doc. No. 63].

### b. The Property

10.      On the Petition Date, Debtor was the sole owner of record of a certain real property with a common address of 5598 Charmaine Bnd, Norcross, GA 30071 (the "**Property**").  [Doc. No. 1 at page 20 of 72].

11.      On his *Schedule C: The Property You Claim as Exempt*, Debtor scheduled a homestead exemption in the Property in the amount of $21,500.00 under O.C.G.A. § 44-13-100(a)(1) (the "**Property Exemption**").  *See* [Doc. No. 1, page 31 of 72].

### c. Alleged Liens, Interests, and Encumbrances

12.      Trustee has reviewed GSCCCA.COM for all liens against the Property, and he has only identified one lien or security interest in or against the Property: the 2002 security interest originally granted by Debtor to Wachovia Mortgage Corporation, securing a loan made to Debtor in the original principal amount of $129,900.00.   Based on the assignment of claim filed in the Bankruptcy Case, this security interest is now held by U.S. Bank, National Association ("**U.S. Bank**"), and the balance of the claim secured by this interest is approximately $107,000.00.  [Doc. No. 44].

13.      Upon information and belief, there are no other liens, interests, or encumbrances on or against the Property except for the Bankruptcy Estate's pro-rata share of the 2022 *ad valorem* real property taxes due the Gwinnett County Tax Commissioner ("**Gwinnett County**").

14.      On July 27, 2022, Trustee filed his *Application to Employ Real Estate Agent Under Listing Agreement* [Doc. No. 82], seeking authority to employ Humphries & King and John Ball (collectively, the "**Broker**") as the listing agent for the Bankruptcy Estate, at a starting list price of $265,000.00 (the "**List Price**") with a six percent (6%) commission of the sale price.

3

On July 29, 2022, the Court entered an *Order* [Doc. No. 83], authorizing Trustee's employment of the Broker.

### d. Filed Claims Against the Bankruptcy Estate

15.     The total of the filed claims against the Bankruptcy Estate is $160,378.96. $130,815.79 of these claims are filed as secured, $2,846.11 of these claims are filed as priority unsecured, and $26,717.06 of these claims are filed as non-priority, general unsecured claims. The deadline to file proofs of claim was July 20, 2022.  [Doc. No. 71].

**Request for Authority to Sell Property of the Estate**
**Free and Clear of all Liens, Interests, and Encumbrances**
**Pursuant to 11 U.S.C. §§ 363(b) and (f)**

16.     After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for the sale of the Property to Ye Liu (the "**Purchaser**"), "as is, where is," for a sale price of $247,500.00 (the "**Purchase Price**") with a $2,500.00 seller's contribution, subject to Bankruptcy Court approval (the "**Contract**").   A true and correct copy of the Contract, as amended, is attached hereto and incorporated herein by reference as Exhibit "A."

17.     The Purchaser was procured through the efforts of Trustee and his Broker, is a *bona fide* purchaser, and is not an insider of Debtor, Trustee, or the Broker.  The Purchaser has submitted an earnest money deposit of $5,000.00.

18.     Trustee's proposed Contract for a Purchase Price of $247,500.00 is: (a) the highest and best offer that Trustee has received; and (b) an appropriate selling price for the Property.

19.     Subject to Bankruptcy Court approval, the closing of the sale of the Property is currently scheduled for December 16, 2022 (the "**Closing**").

### Legal Analysis

### *a. Sale Free and Clear*

20.     Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105 of the Bankruptcy Code grants this Court the authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

21.     The standard to grant a sale of property outside of the ordinary course of business is the sound business judgment of the trustee.  *In re Chateaugay*, 973 F.2d 141 (2d Cir. 1992); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In this regard, a trustee's showing need not be exhaustive; rather, a trustee is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984)

22.     In turn, Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under 11 U.S.C. § 363(b) free and clear of any interest in the subject property if, among other things, the price at which the property is to be sold is greater than the aggregate of the liens on such property, or if such interest is the subject of a bona fide dispute.  11 U.S.C. § 363(f).  Specifically, that code section provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
>> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>> (2)     such entity consents;

5

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

23.    As set forth above and below, Trustee can, under 11 U.S.C. § 363(f), sell the Property free and clear of all liens, claims, interests, and encumbrances with any lien (to the extent valid, perfected, enforceable, and unavoidable) attaching to the proceeds of the sale with the same priority and extent as it had in the Property.

24.    U.S. Bank and Gwinnett County have the only valid liens on or against the Property, and the sum of those liens is less than $120,000.00.  The proposed Purchase Price is significantly greater than the amounts owed to these lienholders, satisfying Section 363(f)(3).

25.    Notably, the proposed sale of the Property is not in the ordinary course of business, as allowed by 11 U.S.C. § 363(b). Any lien to the extent valid, perfected, enforceable and unavoidable will attach to the proceeds of the sale as provided by 11 U.S.C. § 363(f).

### b. Good Faith of Trustee and Purchaser

26.    Moreover, 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith. *See* 11 U.S.C. § 363(m).

27.    Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors or the trustee, or an attempt to take grossly unfair

advantage of other offerors. *See In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

28.     Trustee and Purchaser have proceeded in good faith, and the Purchaser is a *bona fide,* good-faith purchaser and not an insider of Debtor, Trustee, or the Broker.  Consequently, Trustee and Purchaser are entitled to the protections of 11 U.S.C. § 363(m).

**Request for Authority to Disburse Certain Proceeds at Closing**

29.     Trustee requests authority to have all sale proceeds paid to him at Closing and for authority to have paid at Closing: (a) the full loan payoff to U.S. Bank; (b) all outstanding *ad valorem* real property taxes to Gwinnett County (none anticipated); (c) the Bankruptcy Estate's pro-ration of the 2022 *ad valorem* county real property taxes due Gwinnett County (approximately $2,400.00 based on the outstanding bill issued by Gwinnett County); (d) the real estate commission of six percent (6%) of the Purchase Price in the amount of $14,850.00; (e) any capital gains or other taxes related to the sale (none anticipated); (f) water and sewer liens (none anticipated); Debtor's Property Exemption in the amount of $21,500.00; and (h) all other costs of sale, or costs necessary to close a sale of the Property.

30.     All other distributions will be made only upon further order of the Court.

31.     To the extent funds are disbursed at Closing by a party other than Trustee, Trustee requests that such party be treated as Trustee's designated and authorized agent.

32.     Based on the above proposed distributions, Trustee estimates that the proposed sale will result in approximately $90,000.00 to $100,000.00 coming into the Bankruptcy Estate, all of which will be available to distribute in accordance with 11 U.S.C. § 726.   In other words, upon information and belief, the proposed sale of the Property to Purchaser will allow Trustee to make a meaningful distribution to holders of unsecured claims against the Bankruptcy Estate, if

not pay those claimants in full.

**Other Relief Requested**

33.     In addition, Trustee requests that the Court waive the stay of the order approving the proposed sale as authorized under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

34.     Finally, following notice to all creditors and parties in interest of the Sale Motion and the date of the Hearing, Trustee invites any and all parties wishing to submit a competing cash bid which exceeds the present Contract by **at least $7,000.00,** supported by earnest money of **at least two percent (2%) of the bid price**, with no contingencies, and the ability to close within ten (10) days from Bankruptcy Court approval, so long as earnest money is paid to the Trustee in good funds and any such bid is filed with the Court in the form of an objection to the Sale Motion by the objection deadline set forth in the related notice of hearing and objection deadline filed contemporaneously herewith.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)     Granting the Sale Motion;

(b)     Authorizing and approving the Contract and the sale of the Property free and clear of all liens, interests, and encumbrances;

(c)     Authorizing the distribution of certain proceeds at Closing, as set forth herein;

(d)     Authorizing the proposed sale to be consummated immediately as allowed by Federal Rules of Bankruptcy Procedure Rule 6004(h); and

(e)     Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 7th day of November 2022.

ROUNTREE LEITMAN KLEIN & GEER LLC
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*
　　　Michael J. Bargar
　　　Georgia Bar No. 645709
　　　mbargar@rlkglaw.com

Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, GA 30329
404-410-1220

9

**EXHIBIT "A" FOLLOWS**

# PURCHASE AND SALE AGREEMENT

Offer Date: _____10/24/2022_____


*Georgia*REALTORS®

**2022 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. **Property Identification:** Address: _____5598 Charmaine Bend_____
   City ___Norcross___, County ___Gwinnett___, Georgia, Zip Code ___30071___
   MLS Number: ___7109897___    Tax Parcel I.D. Number: _____
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
      ☑ (1) attached as an exhibit hereto;
      ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
      ☐ (3) the same as described in Deed Book _____, Page _____, et. seq., of the land records of the above county; **OR**
      ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/GMD,
         Lot _____, Block _____, Unit _____, Phase/Section _____
         of _____ Subdivision/Development, according
         to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ ___250,000___

3. **Closing Costs.**
   **Seller's Contribution at Closing:** $ ___0___

4. **Closing Date and Possession.**
   Closing Date shall be ___November 30, 2022___ with possession of the Property transferred to Buyer
   ☑ at Closing **OR** ☐ _____ days after Closing at _____ o'clock ☐ AM ☐ PM (attach F219 Temporary Occupancy Agreement).

5. **Closing Law Firm.** Campbell & Brannon    **Phone Number:** 770-396-8535

6. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.)  Campbell and Brannon

7. **Earnest Money.** Earnest Money shall be paid by ☐ check ☐ ACH ☐ cash or ☑ wire transfer of immediately available funds as follows:
   ☐ a. $ _____ as of the Offer Date.
   ☑ b. $ ___5000___ within ___3___ days from the Binding Agreement Date.
   ☐ c. _____.

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of ___5___ days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer
      (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
      (2) shall pay directly to Seller additional option money of $ _____ by ☐ check ☐ ACH or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) **OR** ☑ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Buyer's Broker is** ___Right Path Realty___ and is:
       (1) ☑ representing Buyer as a client.
       (2) ☐ working with Buyer as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where:
       _____ has been assigned to exclusively represent Buyer.
    b. **Seller's Broker is** ___Humphries & King Realty LLC___ and is:
       (1) ☑ representing Seller as a client.
       (2) ☐ working with Seller as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where:
       _____ has been assigned to exclusively represent Seller.
    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
    _____

11. **Time Limit of Offer.** The Offer set forth herein expires at _____ o'clock _____.m. on the date

Buyer(s) Initials _____    Seller(s) Initials _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH John Bat IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.        F201, Purchase and Sale Agreement, Page 1 of 9, 05/01/22

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.**    Trustee

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's ~~Monetary~~ Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction, including without limitation, any commission obligations of Buyer. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's ~~Monetary~~ Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's ~~Monetary~~ Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. Notwithstanding any provision to the contrary, in the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing. The liability to the county and if applicable, city, in which the Property is located for ad valorem real property taxes for the year in which the Property is sold shall be assumed by Buyer upon the Closing of the Property. Buyer agrees to indemnify Seller against any and all claims of the county and if applicable, city, for unpaid ad valorem real property taxes for the year in which the Property is sold.

4. **Closing Date and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. ~~**Closing Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.~~



6. **Holder of Earnest Money.** The earnest money will be paid to Holder in a method of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving of earnest money. Such charge shall be collected separately from the payment of earnest money. The earnest money will be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check or pays with an ACH for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check or ACH has cleared the account on which the check was written or from which the ACH was sent. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages (collectively, "Claims") arising out of the performance by Holder of its duties, including Claims caused, in whole or in part, by the negligence of the Holder; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. If any portion of the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an Exhibit to the Agreement. Buyer shall have the right to conduct a lead hazard evaluation within ten (10) days from the Binding Agreement Date (or other mutually agreed upon time period) and to terminate this Agreement without penalty upon notice to Seller if lead-based paint and/or lead hazards are found (unless these rights are waived by Buyer in the Lead-Based Paint Exhibit (F316)). If the Lead-Based Paint Exhibit (F316) gives Buyer the right to terminate this Agreement if lead-based paint or lead hazards are found and such notice of termination is not given within ten (10) days from Binding Agreement Date (or other mutually agreed upon time period), the right to terminate for lead-based paint and/or lead hazards shall be waived. The above right to enter the Property shall include the time period after the end of any Due Diligence Period to, among other things, and without limitation, conduct inspections, surveys and evaluations, meet contractors and vendors, measure for renovations and confirm that any agreed upon repairs have been made and the Property otherwise remains in the same condition. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at **www.dea.gov.**
   b. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**

dotloop signature verification: dtlp.us/rm48-ahJ3-XbGq

c. ~~Warranties Transfer: Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.~~

d. **Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**

(1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold with all faults. ~~Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property.~~ The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.

(2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.

(3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.

e. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

10. **Brokerage Relationships in this Transaction.**

a. **Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

(1) **No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.

(2) **Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*

(a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

(b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

(c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

(d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

b. **Brokerage:** Unless otherwise specified herein, the real estate commissions owing to the Seller's Broker and Buyer's Broker, if any, are being paid pursuant to separate brokerage engagement agreements. Buyer and Seller agree that any commissions to be paid to Broker(s) shall be shown on the settlement statement and collected by closing attorney as a pre-condition to Buyer and Seller closing on the Property so long as the same is permitted by Buyer's mortgage lender, if any. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s). If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein. The broker(s) are express third-party beneficiaries to this Agreement.

   c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

**C.  OTHER TERMS AND CONDITIONS**

1. **Notices.**
   a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice.  In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery.  The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding.  Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
   b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein) even if it is not opened by the recipient. Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).
   c. **When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party for the limited purpose of receiving notice and such notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein) even if it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.** All default provisions are set forth in the Special Stipulations.
   a. ~~**Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.~~
   b. ~~**Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may: either seek the specific performance of this Agreement or terminate this Agreement upon notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.~~
   c. ~~**Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this Agreement the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission to be paid to any broker involved in this transaction are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.~~
   d. ~~**Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.~~

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement or Seller's Disclosure of Latent Defects and Fixtures Checklist) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially destroyed prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. ~~If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Offer Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Offer Date and a new certificate of occupancy, (if required) is issued.~~

4. **Other Provisions.**

   a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

   b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.

   c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

   d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

   e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.

   f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

   g. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. Provisions in the GAR Forms are subject to differing interpretations by our courts other than what the parties may have intended. At times, our courts may strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

   h. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

   i. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept notices on behalf of a party (but not send notices from Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. ~~In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court or arbitrator having jurisdiction over the dispute, by the written agreement of the Buyer and Seller, or by the Holder but only in making a reasonable interpretation of the Agreement in disbursing earnest money.~~

   j. **Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the party working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes notice of the Binding Agreement Date to the other party.

dotloop signature verification: dtlp.us/rm48-ahJ3-XbGq

   **k. Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving notice of Binding Agreement Date, the party objecting shall send notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.

   **l. Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:

     (1) Handwritten changes shall control over pre-printed or typed provisions;

     (2) Exhibits shall control over the main body of the Agreement;

     (3) Special Stipulations shall control over both exhibits and the main body of the Agreement;

     (4) Notwithstanding the above, any amendatory clause in an FHA or VA exhibit shall control over inconsistent or conflicting provisions contained in a special stipulation, another exhibit or the main body of the Agreement.

  **m. Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

  **n. Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) the section on condemnation; (5) the section on attorney's fees; (6) the obligations of the parties regarding ad valorem real property taxes; and (7) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the Closing.

  **o. Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

  **p. Time of Essence:** Time is of the essence of this Agreement.

**5. Definitions.**

  **a. Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

  **b. Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.

  **c. Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

  **d. Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

  **e. Day:** For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.

  **f. Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

**6. WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

**7. LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):

  **a.** SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THEN THE SUM OF $100; AND

  **b.** NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

8. **Exhibits and Addenda**. All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.

☑ All Cash Sale Exhibit (F401) "___A___"
☐ Back-up Agreement Contingency Exhibit (F604) "_____"
☑ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "___B___"
☐ Community Association Disclosure Exhibit (F322) "_____"
☐ Condominium Resale Purchase and Sale Exhibit (F204) "_____"
☐ Conventional Loan Contingency Exhibit (F404) "_____"
☐ FHA Loan Contingency Exhibit (F407) "_____"
☐ Lead-Based Paint Exhibit (F316) "_____"
☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"
☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"
☑ Legal Description Exhibit (F807 or other) "___C___"
☐ Loan Assumption Exhibit (F416) "_____"
☐ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "_____"
☐ Seller's Property Disclosure Statement Exhibit (F301, F302, F304, F307 or F310) "_____"
☐ Survey of Property as Exhibit "_____"
☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"
☐ USDA-RD Loan Contingency Exhibit (F413) "_____"
☐ VA Loan Contingency Exhibit (F410) "_____"
☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

1. Buyer acknowledges and understands that the offer contemplated by this Agreement is subject to higher and better offers.
2. Seller shall have no duty or obligation to close the sale, as contemplated by this Agreement, until: (a) the entry of an order on the docket in the Chapter 7 bankruptcy case of **Darmin G. Flores (Case No. 20-67784-JWC)** by the United State Bankruptcy Court, Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**") approving the sale of the interest in the bankruptcy estate of **Darmin G. Flores (Case No. 20-67784-JWC)** (the "**Estate**") in the Property to Buyer, or substitute party (the "**Approval Order**"); and (b) the Approval Order becoming a Final Order.

As used in this Agreement or the exhibits hereto, "**Final Order**" means an order of the Bankruptcy Court (1) which contains language to the effect that under Rule 6004(h) of the Bankruptcy Rules, the order shall be effective and enforceable upon entry, or (2) if the order does not contain such language, an order (i) for which any appeal that has been taken has been finally determined or dismissed, or (ii)for which the time for appeal has expired and no appeal had been filed timely.

3. In the event of any material default of the terms of this Agreement, Buyer and Seller shall have the following as their respective sole remedies:

    a. In the event of an uncured material default by Buyer, Seller shall have the right to terminate this Agreement and retain the Earnest Money.

    b. In the event of an uncured material default by Seller, Buyer shall have the right to terminate this Agreement and recover the Earnest Money.

4. Buyer and Seller agree that the Property is being sold "As is, Where is" (subject to any Due Diligence Period) and that Seller is not making and has not made any representations or warranties or any present or future covenants regarding the quality of title of the Estate in the the Property. At the closing of the sale contemplated by this Agreement, Seller will convey the Estate's interest in the Property via trustee deed.
5. Buyer and Seller may jointly change the closing date by a separate agreement in writing signed by both Buyer and Seller.
6. If this Agreement is not earlier terminated, then in the event that the Bankruptcy Court (1) denies approval of this Agreement, or (2) fails to issue an Approval Order, then, unless otherwise agreed to by Buyer and Seller in writing, this Agreement shall terminate and be of no further force or effect and the parties will be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.
7. Buyer acknowledges and understands that Seller is a bankruptcy trustee, has never seen the Property, has never visited the Property, and has no personal knowledge or information about the Property.

☐ **Additional Special Stipulations (F246) are attached.**

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

## Buyer Acceptance and Contact Information

1 **Buyer's Signature**

Ye Liu                                         3:17p.m. 10-25-2022

Print or Type Name                     Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

2 **Buyer's Signature**

Print or Type Name                     Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

## Seller Acceptance and Contact Information

1 **Seller's Signature**

S. Gregory Hays, as Chapter 7 Trustee for the estate of Darwin G. Flores          10-22-22

Print or Type Name                     Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

2 **Seller's Signature**

Print or Type Name                     Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

## Buyer's Broker/Affiliated Licensee Contact Information

Right Path Realty

Buyer Brokerage Firm

La Heu                                         12:05p.m. 10-24-2022

Broker/Affiliated Licensee Signature     Date

La Heu                                         270175

Print or Type Name              GA Real Estate License #

678-793-1860

Licensee's Phone Number          Fax Number

la_heu@yahoo.com

Licensee's E-mail Address

REALTOR® Membership

3675 Crestwood Pkwy Suite 400 Duluth, GA 30096

Broker's Address

678-321-8633                            678-840-7880

Broker's Phone Number                  Fax Number

EXGR01                                    H-678-75162

MLS Office Code          Brokerage Firm License Number

## Seller's Broker/Affiliated Licensee Contact Information

Seller Brokerage Firm

John Ball                   dotloop verified
                           10/27/22 6:36 PM EDT
                           QHI2-1IQ2-ASO6-V84J

Broker/Affiliated Licensee Signature     Date

John Ball                                 386751

Print or Type Name              GA Real Estate License #

404-418-2772

Licensee's Phone Number          Fax Number

John@HKAtlanta.com

Licensee's Email Address

REALTOR® Membership

830 Glenwood Ave., Suite 510-205, Atlanta, GA 30316

Broker's Address

404-720-2965

Broker's Phone Number                  Fax Number

HKRL01                                    H-76339

MLS Office Code          Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of          10/30/2022
and has been filled in by          John Ball



# ALL CASH SALE
# (NO FINANCING CONTINGENCY)
# EXHIBIT "__A__"



**2021 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____10/24/2022_____ for the purchase and sale of that certain Property known as: _____5598 Charmaine Bend_____, _____Norcross_____, Georgia ___30071___.

1. **All Cash Sale.** While Buyer has sufficient liquid assets to purchase the Property in this transaction for "all cash", Buyer:
   A. ☐ reserves the right to pay all or a portion of the purchase price by obtaining an institutional first mortgage secured by a deed to secure debt on the Property; AND/OR
      ☑ reserves the right to pay all or a portion of the purchase price by obtaining a non-institutional first mortgage or other loan (including a private "hard-money" loan).

   **OR**

   B. ☐ shall not have the right to obtain a mortgage financing to pay for all or a portion of the purchase price of the Property. The Buyer is not obtaining a loan; therefore, the Buyer has no right to unilaterally extend the closing date for eight (8) days for reasons of mortgage lender delay.

2. **Verification of Funds.** Within ___3___ days from the Binding Agreement Date Buyer shall be obligated to provide or cause to be provided to Seller information describing in specific detail all of the sources of Buyer's funds to purchase the Property ("Required Information"). The Required Information shall consist of at least one of the following:
   A. A letter or letters from a trust, stock brokerage firm and/or financial institution holding funds, stocks, bonds and/or other assets (hereinafter collectively referred to as "Assets") of or on behalf of Buyer and dated subsequent to the Binding Agreement Date stating that Buyer has funds of at least an amount specified in the letter and/or Assets on deposit with the institution of a value specified in the letter, that are sufficient to allow Buyer to complete the purchase of the Property;
   B. An account statement or statements from the trust, stock brokerage firm and/or financial institution(s) holding funds and/or Assets confirming a specific amount of funds and/or Assets on deposit with the institution. Such account statement must be for the regular time period that such statements are issued immediately preceding the Binding Agreement Date.

3. **Authorization and Security.** Buyer does hereby authorize Seller and Listing Broker to communicate with any person providing information regarding Buyer's source of funds to purchase the Property to verify such information and to answer any questions Seller or Listing Broker may have regarding the source of Buyer's funds to purchase the Property. In providing any account statement to Seller, Buyer shall be entitled to delete or otherwise shield account numbers, social security numbers, telephone numbers and other information the release of which could jeopardize the security of the account or put the Buyer at greater risk of identity theft.

4. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Required Information within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

5. **Appraisal Contingency.** In addition to the other rights of Buyer set forth herein, this Agreement ☐ shall or ☑ shall not be subject to the Property appraising for at least the purchase price. Buyer shall have the rights set forth in this exhibit in the event the Property does not appraise for at least the purchase price in accordance with the terms and conditions set forth below:
   A. **Type of Appraisal:** The appraisal shall be a "certified appraisal" of the Property (as that term is defined in O.C.G.A. § 43-39A-2) performed or signed off by a licensed or certified appraiser (as those terms are defined in the rules and regulations of the Georgia Real Estate Appraiser's Board) and include a statement that the appraiser performed an "independent appraisal assignment" (as that term is defined in O.C.G.A. § 43-39A-2(13)) with respect to the Property.
   B. **Selection of Appraiser:** The appraiser shall be selected by *[Select one. The sections not selected shall not be a part of this Agreement.]:* ☐ Buyer, ☐ Seller, OR ☐ Other (_____); and all parties agree that this appraiser shall only perform a single certified appraisal of the Property.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____La Heu_____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2021 by Georgia Association of REALTORS®, Inc.                    F401, All Cash Sale Exhibit, Page 1 of 2, 01/01/21

**C. Rights of Buyer If Property Does Not Appraise:** If any appraisal performed pursuant to and in accordance with this exhibit is for less than the purchase price of the Property, the Buyer shall have the right to request within __0__ days from the Binding Agreement Date that Seller reduce the sales price of the Property to a price not less than the appraised price by submitting an Amendment to Sales Price ("ATSP") to Seller along with a complete copy of the appraisal which is for less than the purchase price. In the event that Buyer does not submit an ATSP within the time frame referenced above, Buyer shall be deemed to have waived Buyer's right to request a reduction in the sales price and this Agreement shall no longer be subject to an appraisal contingency. The time limit of the offer for the Seller to accept or reject the ATSP shall run through the earlier of: (1) three (3) days from the date that the ATSP is delivered to Seller; or (2) the time of closing (excluding any extensions of the closing resulting from the unilateral extension of the closing date).

If Seller does not accept the ATSP, Buyer shall have the right, but not the obligation, to terminate this Agreement without penalty upon notice to Seller, provided that such notice is given within three (3) days of the earlier of: (a) the date that Buyer receives notice that Seller has not accepted the ATSP; or (b) the last date Seller could have accepted the ATSP. In neither circumstance shall the Buyer's right to terminate extend beyond the time of closing.

**D. Buyer Not Obligated to Seek Price Reduction:** Nothing herein shall require Buyer to seek any reduction in the sales price of the Property. If Buyer does not seek a reduction in the sales price, Buyer shall be obligated to purchase the Property for the price agreed to by the parties in the Agreement.

Buyer's Initials: _____    Seller's Initials: _____

dotloop signature verification: dtlp.us/rm48-ahj3-XbGq



# CLOSING ATTORNEY ACTING AS
# HOLDER OF EARNEST MONEY
### EXHIBIT " B "

*Georgia*REALTORS®

**[Closing Attorney must still consent to serve as Holder using F511]**

**2022 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____10/25/2022_____ for the purchase and sale of that certain property known as: _____5598 Charmaine Bend, Norcross_____ , Georgia _____30071_____ ("Agreement").

1. **Closing Attorney Shall Act as Holder.** The Closing Attorney named in this Agreement shall be the Holder of the earnest money and other trust funds referenced in this Agreement subject to the Closing Attorney timely: a) agreeing to serve; b) signing the appropriate documents; and c) timely delivering the same to Buyer and Seller as more particularly described below.

2. **Buyer Must Timely Deliver Certain Documents to Closing Attorney Acting as Holder of Earnest Money.** When the Closing Attorney has been named as Holder in the Agreement, Buyer must deliver to Closing Attorney within two (2) business days from the Binding Agreement Date: a) the fully-signed and executed Agreement in its entirety ("Entire Contract"); and b) a copy or copies of the Escrow Agreement (F511) for the Closing Attorney to sign agreeing to become the Holder. Buyer must similarly deliver to Holder all amendments to the Entire Contract within two (2) business days of the date that the Amendment becomes binding.

3. **Closing Attorney Must Agree to Become Holder Within Three (3) Business Days of Receiving Entire Contract.** The Closing Attorney named as Holder shall not become the Holder unless within three (3) business days from the date that the Closing Attorney receives the Entire Contract, the Closing Attorney has: a) countersigned the Agreement of Closing Attorney to serve as Holder (GAR Form F511, and sometimes referred to as "Escrow Agreement") without change or modification so except for filling in the blanks contained therein; and b) delivered the same to Buyer and Seller. When this occurs, Closing Attorney's rights and duties as Holder and the timeframe for completing the same shall commence.

4. **Rights and Duties of Closing Attorney Acting as Holder.** Notwithstanding any provision to the contrary contained in the Agreement, Closing Attorney acting as Holder shall have all of the pre-printed rights and duties of Holder set forth in the GAR Purchase and Sale Agreement (a copy of which is incorporated herein by reference), regardless of whether such rights and duties are set forth in this Agreement. In the event of a conflict between this Agreement and the pre-printed right and duties of Holder set forth in the GAR Purchase and Sale Agreement, the latter shall control unless otherwise agreed to in writing by Buyer, Seller, and Holder. In the event the transaction does not close, Closing Attorney shall not have a right to deduct any of attorney's costs or fees pertaining to the Closing from the earnest money or other trust funds being held by Closing Attorney, except as may be provided elsewhere herein.

5. **Earnest Money Must Be Paid to Closing Attorney Acting as Holder by Wire Transfer.** Buyer shall be responsible for paying all earnest money and other Buyer trust funds to the Closing Attorney acting as Holder by wire transfer of immediately available funds or by such other method deemed acceptable and/or required by Closing Attorney, as the case may be.

6. **Failure of Closing Attorney to Become Holder.** If the Closing Attorney named as Holder has not become Holder because the Closing Attorney rejects being the Holder or fails to timely become Holder, then: a) the Alternate Holder named below, who must be a broker in this transaction, shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same. The signature of the Alternate Holder to the Agreement at the time it is first signed shall be deemed consent of the Alternate Holder to serve as Holder. The Alternate Holder's duties and the timeline for performing those duties shall commence when the Alternate Holder becomes the Holder.

7. **Alternate Holder.** The Buyer must immediately notify all parties if the Closing Attorney fails to become Holder. The Alternate Holder, who must be a broker in this transaction, shall be _____Right Path Realty_____ .
   In the event an Alternate Holder is not named, the Alternate Holder shall be the Buyer's Broker.

8. **Closing Attorney Holding Earnest Money in All-Cash Transaction.** In an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the Closing Attorney can hold the earnest money (and other trust funds), but in the event of a dispute between the parties regarding the disbursement of the funds, the Closing Attorney shall not disburse the funds based upon a reasonable interpretation of the Agreement. Instead and notwithstanding any provision to the contrary contained in this agreement, in the event of a dispute regarding the earnest money in an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the only remedy available to the Closing Attorney to resolve the dispute regarding the disbursement of earnest money shall be to interplead the funds into a court of competent jurisdiction.

9. **Notices To and From Holder.** The notice procedures in the Agreement shall control with regard to all notices to and from Holder. Holder's contact information is set forth in signature pages to this Agreement.

10. **Closing Attorney's Contact Information.** The Closing Attorney named below shall be the Holder in this transaction.

Closing Attorney: _____Campbell and Brannon_____
Address: _____5565  Glenridge Connector 350, Atlanta, GA 30342_____
Phone Number: _____(770) 396-8535_____
Fax Number: _____
Email: _____

Buyer's Initials: _____YL_____        Seller's Initials: _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____La Heu_____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.            F510, Closing Attorney Acting as Holder of Earnest Money Exhibit, 05/01/22

dotloop signature verification: dtlp.us/rm48-ahJ3-XbGq

**CHASE PRIVATE CLIENT**

September 01, 2022 through September 30, 2022

Primary Account: 0███████████

CHASE PRIVATE CLIENT SAVINGS 

YE LIU

Account Number: 0███████████

## SAVINGS SUMMARY

|  | AMOUNT |
|---|---|
| Beginning Balance | $275,205.45 |
| Deposits and Additions | 4.46 |
| Ending Balance | $275,209.91 |
| Annual Percentage Yield Earned This Period | 0.02% |
| Interest Paid This Period | $4.46 |
| Interest Paid Year-to-Date | $24.06 |

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
|  | Beginning Balance |  | $275,205.45 |
| 09/30 | Interest Payment | 4.46 | 275,209.91 |
|  | Ending Balance |  | $275,209.91 |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

JPMorgan Chase Bank, N.A. Member FDIC



# CLOSING ATTORNEY ACTING AS
# HOLDER OF EARNEST MONEY
# EXHIBIT " B "
### [Closing Attorney must still consent to serve as Holder using F511]

*Georgia*REALTORS®

**2022 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____10/24/2022_____ for the purchase and sale of that certain property known as: _____5598 Charmaine Bend_____ _____Norcross_____, Georgia ____30071____ ("Agreement").

1.  **Closing Attorney Shall Act as Holder.** The Closing Attorney named in this Agreement shall be the Holder of the earnest money and other trust funds referenced in this Agreement subject to the Closing Attorney timely: a) agreeing to serve; b) signing the appropriate documents; and c) timely delivering the same to Buyer and Seller as more particularly described below.

2.  **Buyer Must Timely Deliver Certain Documents to Closing Attorney Acting as Holder of Earnest Money.** When the Closing Attorney has been named as Holder in the Agreement, Buyer must deliver to Closing Attorney within two (2) business days from the Binding Agreement Date: a) the fully-signed and executed Agreement in its entirety ("Entire Contract"); and b) a copy or copies of the Escrow Agreement (F511) for the Closing Attorney to sign agreeing to become the Holder. Buyer must similarly deliver to Holder all amendments to the Entire Contract within two (2) business days of the date that the Amendment becomes binding.

3.  **Closing Attorney Must Agree to Become Holder Within Three (3) Business Days of Receiving Entire Contract.** The Closing Attorney named as Holder shall not become the Holder unless within three (3) business days from the date that the Closing Attorney receives the Entire Contract, the Closing Attorney has: a) countersigned the Agreement of Closing Attorney to serve as Holder (GAR Form F511, and sometimes referred to as "Escrow Agreement") without change or modification so except for filling in the blanks contained therein; and b) delivered the same to Buyer and Seller. When this occurs, Closing Attorney's rights and duties as Holder and the timeframe for completing the same shall commence.

4.  **Rights and Duties of Closing Attorney Acting as Holder.** Notwithstanding any provision to the contrary contained in the Agreement, Closing Attorney acting as Holder shall have all of the pre-printed rights and duties of Holder set forth in the GAR Purchase and Sale Agreement (a copy of which is incorporated herein by reference), regardless of whether such rights and duties are set forth in this Agreement. In the event of a conflict between this Agreement and the pre-printed right and duties of Holder set forth in the GAR Purchase and Sale Agreement, the latter shall control unless otherwise agreed to in writing by Buyer, Seller, and Holder. In the event the transaction does not close, Closing Attorney shall not have a right to deduct any of attorney's costs or fees pertaining to the Closing from the earnest money or other trust funds being held by Closing Attorney, except as may be provided elsewhere herein.

5.  **Earnest Money Must Be Paid to Closing Attorney Acting as Holder by Wire Transfer.** Buyer shall be responsible for paying all earnest money and other Buyer trust funds to the Closing Attorney acting as Holder by wire transfer of immediately available funds or by such other method deemed acceptable and/or required by Closing Attorney, as the case may be.

6.  **Failure of Closing Attorney to Become Holder.** If the Closing Attorney named as Holder has not become Holder because the Closing Attorney rejects being the Holder or fails to timely become Holder, then: a) the Alternate Holder named below, who must be a broker in this transaction, shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same. The signature of the Alternate Holder to the Agreement at the time it is first signed shall be deemed consent of the Alternate Holder to serve as Holder. The Alternate Holder's duties and the timeline for performing those duties shall commence when the Alternate Holder becomes the Holder.

7.  **Alternate Holder.** The Buyer must immediately notify all parties if the Closing Attorney fails to become Holder. The Alternate Holder, who must be a broker in this transaction, shall be N/A .
    In the event an Alternate Holder is not named, the Alternate Holder shall be the Buyer's Broker.

8.  **Closing Attorney Holding Earnest Money in All-Cash Transaction.** In an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the Closing Attorney can hold the earnest money (and other trust funds), but in the event of a dispute between the parties regarding the disbursement of the funds, the Closing Attorney shall not disburse the funds based upon a reasonable interpretation of the Agreement. Instead and notwithstanding any provision to the contrary contained in this agreement, in the event of a dispute regarding the earnest money in an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the only remedy available to the Closing Attorney to resolve the dispute regarding the disbursement of earnest money shall be to interplead the funds into a court of competent jurisdiction.

9.  **Notices To and From Holder.** The notice procedures in the Agreement shall control with regard to all notices to and from Holder. Holder's contact information is set forth in signature pages to this Agreement.

10. **Closing Attorney's Contact Information.** The Closing Attorney named below shall be the Holder in this transaction.

Closing Attorney: Campbell and Brannon - Glenridge
Address: 5565 Glenridge Con #350, Atlanta, GA 30342

Phone Number: (770) 396-8535
Fax Number: _____
Email: Glenorders@cb.law

Buyer's Initials: ____YL____    Seller's Initials: ____(signature)____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH John Ball IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.    F510, Closing Attorney Acting as Holder of Earnest Money Exhibit, 05/01/22

# AGREEMENT OF CLOSING ATTORNEY TO SERVE
# AS HOLDER OF EARNEST MONEY
# ("ESCROW AGREEMENT")
**[Should only be used when F510 Closing Attorney Acting as Holder of
Earnest Money Exhibit has been made part of the Purchase and Sale Agreement]**



**2022 Printing**

For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the following closing attorney or law firm: <u>Campbell and Brannon - Glenridge</u> ("Closing Attorney") having being named as Holder in the Purchase and Sale Agreement by and between <u>Ye Liu</u> ("Buyer") and <u>S. Gregory Hays, as Trustee for Mr. Darwin Flores</u> ("Seller") with an offer date of <u>10/24/2022</u> for real property located at: <u>5598 Charmaine Bend, Norcross, GA 30071</u> ("Agreement") does hereby agree to serve as Holder in such Agreement, subject to the terms herein.

1. **TERMS OF CLOSING ATTORNEY ACTING AS HOLDER.**

   a. This Escrow Agreement is hereby incorporated into the Agreement and together they shall bind Closing Attorney acting as Holder. The provisions in the Agreement (including the Escrow Agreement) relating directly or indirectly to earnest money and trust funds may be enforced by Holder as a third-party beneficiary to the Agreement. Holder shall have all of the pre-printed rights and duties of Holder and shall follow the procedures binding Holder set forth in the Agreement, unless other agreed to in writing by Buyer, Seller, and Holder. Closing Attorney shall have all of the preprinted rights and duties of Holder set forth in the Agreement without amendment or modification;

   b. Upon the Closing Attorney becoming Holder, the timeframe for Closing Attorney to begin to perform the duties of Holder shall not commence until Holder receives the signed and executed Agreement in its entirety ("Entire Contract"). With regards to amendments to the Entire Contract, the rights and duties of Holder under the amendment shall not commence until Holder receives the amendment.

   c. In the event the transaction does not close, Closing Attorney shall not have a right to deduct any of attorney's costs or fees pertaining to the Closing from the earnest money or other trust funds being held by Closing Attorney, except as may be provided elsewhere herein.

   d. This Escrow Agreement shall be interpreted in accordance with the laws of the State of Georgia;

   e. Time is of the essence; and

   f. This Agreement (including the Escrow Agreement) and any amendment thereto shall constitute the entire agreement of the parties relative to the Closing Attorney acting as Holder.

2. **CLOSING ATTORNEY MUST AGREE TO BECOME HOLDER WITHIN THREE (3) BUSINESS DAYS**. The Closing Attorney shall not become the Holder unless the Closing Attorney has within three (3) business days from the date the Closing Attorney receives the Entire Contract the Closing Attorney has: a) signed this Escrow Agreement without modification (except for filling in the blanks contained herein); and b) delivered the same to Buyer and Seller.

3. **FAILURE OF CLOSING ATTORNEY TO TIMELY AGREE TO BECOME HOLDER.** If the Closing Attorney named as Holder herein has not become Holder within three (3) business days from the date the Closing Attorney receives the Entire Contract in which the Closing Attorney has been appointed as the Holder, then: a) the Alternate Holder referenced in the Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same.

4. **CONTACT INFORMATION**

Buyer's Name: <u>Ye Liu</u>
Address: _____

Phone Number: _____
Fax Number: _____
Email: _____

Seller's Name: <u>S. Gregory Hays, as Chapter 7 Trustee for the bankruptcy of Darwin G. Flores</u>
Address: <u>2964 Peachtree Road, Atlanta, GA 30305, Suite 555</u>

Phone Number: _____
Fax Number: _____
Email: _____

Buyer's Name: _____
Address: _____

Phone Number: _____
Fax Number: _____
Email: _____

Seller's Name: _____
Address: _____

Phone Number: _____
Fax Number: _____
Email: _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH John Ball IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.        F511, Agreement of Closing Attorney to Serve as Holder of Earnest Money, Page 1 of 2, 05/01/22

| | |
|---|---|
| Buyer Licensee's Name: La Heu | Seller Licensee's Name: John Ball |
| Buyer's Broker Right Path Realty | Seller's Broker Humphries & King Realty |
| Address: 3675 Crestwood Pkwy Suite 400 | Address: 830 Glenwood Ave. Suite 510-205 |
| Duluth, GA 30096 | Atlanta, GA 30316 |
| Phone Number: 678-321-8699 | Phone Number: 404-720-2965 |
| Fax Number: 678-840-7880 | Fax Number: 000-000-0000 |
| Email: la_heu@yahoo.com | Email: John@hkatlanta.com |

**Closing Attorney**                                    **Date**

By: _____
Signature of Its Authorized Representative

_____
Print or Type Name

_____
Closing Attorney's Address

_____

_____
E-mail Address of Holder

_____
Telephone Number of Holder

_____
Facsimile Number of Holder

Copyright© 2022 by Georgia Association of REALTORS®, Inc.    F511, Agreement of Closing Attorney to Serve as Holder of Earnest Money, Page 2 of 2, 05/01/22

dotloop signature verification: dtlp.us/rm48-ahJ3-XbGq

https://search.gsccca.org/imaging/HiML3Viewer.aspx?id=122033...

GsCCCA.org - Image Index

# Exhibit C

**BK 27718 PG0090**

**LEGAL DESCRIPTION**
**(DARWIN FLORES)**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 215, OF THE 6TH DISTRICT, OF GWINNETT COUNTY, GEORGIA, BEING SHOWN AS LOT 5, BLOCK A, UNIT TWO, MITCHELL BESS SUBDIVISION, ON PLAT OF SURVEY FOR LYNN E. CHILDERS AND AMANDA L. CHILDERS, DATED MARCH 14, 1995, PREPARED BY WILLIAM C. ELLIS, GEORGIA REGISTERED LAND SURVEYOR. THIS IS THE SAME PROPERTY SHOWN AS SAID LOT, BLOCK, UNIT AND SUBDIVISION ON SUBDIVISION PLAT RECORDED AT PLAT BOOK 24, PAGE 17, GWINNETT COUNTY, GEORGIA PLAT RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

27718
0090

7/26/2022, 9:21 AM

1 of 1

dotloop signature verification: dtlp.us/89HA-TZGP-WrwC

# AMENDMENT TO AGREEMENT
## AMENDMENT # ___1___



Date: _____11/3/2022_____



**2022 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between Ye Liu _____
_____ ("Buyer") and S. Gregory Hays, as Chapter 7 Trustee for the estate of Darwin G. Flores ("Seller"),
with a Binding Agreement Date of _____ for the purchase and sale of real property located at:
5598 Charmaine Bend _____, Norcross_____ , Georgia 30071_____ ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]
All parties agree sales price shall be $247,500.00 and seller shall contribute $2,500 towards buyer's closing costs.

☐ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

_____  S. Gregory Hays, as Chapter 7 Trustee for the    dotloop verified
1 Buyer's Signature   34b312d   bankruptcy Mr. Flores   11/04/22 5:13 PM EDT
                                                        TNXG-N0N3-ODEA-9LHY
_____
1 Seller's Signature

_____         _____
2 Buyer's Signature                      2 Seller's Signature

☐ **Additional Signature Page (F267) is attached.**    ☐ **Additional Signature Page (F267) is attached.**

Right Path Realty                        Humphries & King Realty, LLC.
Buyer Brokerage Firm                     Seller Brokerage Firm

LA HEU                                   John Ball    dotloop verified
                                                      11/04/22 5:32 PM EDT
                                                      JE3M-Q6QZ-RPYH-U4Z4
Broker/Affiliated Licensee Signature   f06df5b   Broker/Affiliated Licensee Signature

_____         _____
REALTOR® Membership                      REALTOR® Membership

**Acceptance Date.** The above Amendment is hereby accepted, _____5:13___ o'clock ____P__ .m. on the
date of _____11/04/2022_____ , ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____La Heu_____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2022 by Georgia Association of REALTORS®, Inc.     F701, Amendment to Agreement, 01/01/22

## CERTIFICATE SERVICE

      This is to certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's Motion for Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail and/or certified mail, as indicated, to the following persons at the addresses stated:

**First Class Mail**
Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

**First Class Mail**
Bruce Williams, CEO
NewRez LLC
1100 Virginia Drive, Suite 125
Fort Washington, PA, 19034

**First Class Mail**
NewRez LLC
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

**First Class Mail**
Andrew D. Gleason
Lefkoff Rubin Gleason Russo & Williams
PC
5555 Glenridge Connector, Suite 900
Atlanta, GA 30342

**First Class Mail**
Denise R. Mitchell
Gwinnett County Tax Commissioner
PO Box 829
Lawrenceville, GA 30046

**First Class Mail**
Michael Campbell
Attention: Denise Hammock
Campbell & Brannon, LLC
5565 Glenridge Connector, Suite 350
Atlanta, GA 30342

**First Class Mail**
Darwin G. Flores
5598 Charmaine Bnd
Norcross, GA 30071

**First Class Mail and**
**Certified Mail**
U.S. Bank National Association
Andy Cecere, CEO
425 Walnut St
Cincinnati, OH 45202

**First Class Mail and**
U.S. Bank National Association
Andy Cecere, CEO
PO Box 1950
St. Paul, MN 55101-0950

This 7th day of November 2022.

_/s/ Michael J. Bargar_
Michael J. Bargar
Georgia Bar No. 645709